## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **ELECTRI-REP, INC.,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 15-9127-JAR-GEB** |
| **RONALD S. ZUREK,** | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

Plaintiff Electri-Rep, Inc., brings this lawsuit against its former employee for breach of contract and tortious interference with an existing contractual relationship, seeking both monetary damages and injunctive relief for the alleged violation of a noncompetition clause ancillary to Defendant's employment agreement.[1]  Defendant Ronald Zurek filed a counterclaim for unpaid wages and commissions.  This matter is before the Court on Plaintiff's Motion for Partial Summary Judgment (Doc. 17) on its breach of contract claim as well as Defendant's counterclaim.  For the reasons explained in detail below, Plaintiff's motion is denied.

### I.      Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates "that there is no genuine dispute as to any material fact" and that it is "entitled to judgment as a matter of law."[2]  In applying this standard, the Court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party.[3]  "There is no genuine [dispute] of material

---

[1]This case was removed from Johnson County, Kansas District Court on June 16, 2015. Doc. 1.  A hearing on Plaintiff's Motion for Temporary Restraining Order was cancelled upon removal of the case.  Doc. 3.  Plaintiff did not request a temporary restraining order or preliminary injunction before this Court.

[2]Fed. R. Civ. P. 56(a).

[3]*City of Herriman v. Bell*, 590 F.3d 1176, 1181 (10th Cir. 2010).

fact unless the evidence, construed in the light most favorable to the non-moving party, is such that a reasonable jury could return a verdict for the non-moving party."[4]  A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim."[5]  A dispute of fact is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way."[6]

The moving party initially must show the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law.[7]  Where, as here, the movant bears the burden of proof on a claim or defense, a more stringent standard applies: it "must establish, as a matter of law, all essential elements of the issue before the nonmoving party can be obligated to bring forward any specific facts alleged to rebut the movant's case."[8]  If the moving party properly supports its motion, the burden shifts to the non-moving party, "who may not rest upon the mere allegation or denials of his pleadings, but must set forth specific facts showing that there is a genuine issue for trial."[9]  In setting forward these specific facts, the nonmovant must identify the facts "by reference to affidavits, deposition transcripts, or specific exhibits incorporated therein."[10]  If the evidence offered in opposition to summary judgment is merely colorable or is not significantly probative, summary judgment may be granted.[11]  A party opposing summary judgment "cannot rely on ignorance of the facts, on speculation, or on suspicion, and may not

---

[4]*Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 255 (1986)).

[5]*Wright ex rel. Trust Co. of Kan. v. Abbott Labs., Inc.*, 259 F.3d 1226, 1231–32 (10th Cir. 2001) (citing *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998)).

[6]*Adler,* 144 F.3d at 670 (citing *Anderson,* 477 U.S. at 248).

[7]*Spaulding v. United Transp. Union,* 279 F.3d 901, 904 (10th Cir. 2002), *cert. denied* 537 U.S. 816 (2002) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23 (1986)).

[8]*Pelt v. Utah,* 539 F.3d 1271, 1280 (10th Cir. 2008) (citing *Celotex,* 477 U.S. at 323).

[9]*Muck v. United States,* 3 F.3d 1378, 1380 (10th Cir. 1993).

[10]*Adler*, 144 F.3d at 671.

[11]*Cone v. Longmont United Hosp. Ass'n,* 14 F.3d 526, 533 (10th Cir. 1994).

escape summary judgment in the mere hope that something will turn up at trial."[12]  Put simply,

the nonmoving party must "do more than simply show there is some metaphysical doubt as to the

material facts."[13]

Finally, summary judgment is not a "disfavored procedural shortcut"; on the contrary, it

is an important procedure "designed to secure the just, speedy and inexpensive determination of

every action."[14]

## II.    Uncontroverted Facts

The following material facts are uncontroverted, stipulated to for the purposes of

summary judgment, or viewed in the light most favorable to Defendant, the nonmoving party.

Defendant Zurek began his career in the field of manufacturing sales in 1990.  In 1994,

Zurek formed and worked for Lynxtron Corporation ("Lynxtron") until 2006.  Lynxtron's clients

included Universal Instruments Corporation ("Universal") and Speedline Technologies

Corporation ("Speedline").  Zurek had relationships with other manufacturers as well, including

Pattern Recognition & Machine Intelligence Corporation ("Parmi") and Zestron Corporation

("Zestron").  Zurek's territory included northern Illinois and southern Wisconsin.

From 2006 to 2103, Zurek worked for a company he created called Logitek.  During this

time span, Zurek made no sales for principals Speedline, Parmi, Universal, or Zestron.  Zurek

took time off from Logitek during this period to care for his wife and to work as a car salesman.

 Plaintiff Electri-Rep, Inc. ("ERI") is a Sales Representative for several principals in the

business of manufacturing equipment and supplies, including Parmi, Universal Instruments,

Stone Mountain Tool, Zestron, and Conecsus.  Zurek testified that in 2013, Chris Lucas, ERI's

---

[12]*Conaway v. Smith*, 853 F.2d 789, 793 (10th Cir. 1998), *aff'd*  939 F.2d 910 (10th Cir. 1991).

[13]*Matushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

[14]*Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).

President, contacted Zurek about coming to work for ERI because Zurek had the clients and the

contacts.  He further testified that ERI did not have any competitive lines in northern Illinois and

southern Wisconsin before hiring him.  ERI and Zurek entered in to a Commission Sales

Agreement (the "Agreement") signed by Zurek on January 21, 2013.[15]  Highly summarized, the

Agreement states in relevant part, that Zurek would be paid a monthly base salary of $4000,

payable on the first day of each month; that Zurek was eligible to receive a commission of 50%

of the commission ERI receives, payable on the 15th of each month; sets forth a calculation of

commissions due upon separation from ERI; and sets forth a detailed "nondisclosure,

noncompetition and nonsolicitation" section that states that for three years after termination, a

Sales Representative will not "engage in, perform any work or activity or offer any service in

which he/she represents any principle [sic] which is or was represented by ERI during Sales

Representative's employment in any market or in any county in any state of the United States in

which the Sales Representative engaged in work for ERI or had contact with ERI's principles

[sic]."[16]  The Agreement further states that the parties agree that any suit, action, or legal

proceeding arising out of or relating to the Agreement shall be brought in Kansas court and

governed by Kansas law, and that the prevailing party in any lawsuit shall be entitled to recover

its attorneys' fees.[17]

Zurek testified he began work for ERI on January 21, 2013, the date he signed the

Agreement. Zurek was assigned the territory of northern Illinois and southern Wisconsin to

generate sales of product lines represented by ERI.  Zurek testified that ERI did not provide him

with any training or client contact information because he already had it.  During his

---

[15]Doc. 18, Stip. Ex. 2.

[16]*Id.*.

[17]*Id.*

employment with ERI, Zurek sold product on behalf of Speedline, Parmi, and Universal Instruments, who signed on with ERI shortly after he was hired.

Zurek did not receive a salary payment on February 1, 2013.  Instead, on February 14, 2013, ERI gave him an interest-free advance on his first salary payment due March 1, 2013, to be repaid at $1,000 per month from his April through June 2013 salary payments.  Zurek testified that he suspected ERI was underreporting commission statements; he began contacting manufacturers and learned that the numbers they reported did not match up with ERI's commission statements.  Zurek submits numerous emails he sent to Chris Lucas and various principals about commissions.  For example, Zurek contends that in September 2014, ERI reported to Zurek that commissions were $66,000, but when he contacted Speedline, Zurek learned that commission payments were in excess of $84,000.

Zurek last worked for ERI in September 2014, when he voluntarily resigned and formed Lexacon, LLC.  Zurek currently is the sole owner and employee of that company, and works as a manufacturer's representative.  In October 2014, Zurek notified Parmi, Speedline and Universal that he was leaving ERI.  Within the month, Zurek was contacted by and entered into Representative Agreements with Universal and Parmi, selling the same products he was selling while at ERI.  Zurek contends that Lexacon has different territories with Parmi and Universal than ERI.  Since leaving ERI, Zurek admits he has made five sales for Parmi and Universal that ERI claims are in violation of the noncompete agreement, earning commissions in excess of $67,000 for Universal and $48,000 for Parmi.  ERI claims that these sales were from ERI principals and in violation of Zurek's restrictive covenants, and that it is entitled to damages in the amount of those commissions.

ERI submits Zurek's monthly salary payments from March 1, 2013 through October 2014.[18]  ERI further submits the affidavit of Chris Lucas, who avers that by the end of August 2014, Zurek had been overpaid commissions by $16,855.52.[19]  Lucas avers that in October 2014, ERI paid Zurek commissions of $16,732.25, which was $2,265.42 more than he was actually due.[20]  Zurek submits an itemization of alleged unpaid commissions on Universal sales that total $3,291.42,[21] and on Speedline sales that total $54,719.83.[22]  Zurek also claims unpaid commissions on Zestron and Conecsus sales and has requested an accounting from ERI.

## III.   Discussion

ERI alleges that Zurek breached the non-competition agreement that prohibited him from performing any work for or soliciting or contacting any principal that is or was represented by ERI during Zurek's employment in any market or in any state in which Zurek engaged in work for ERI for three years after terminating employment with ERI.  Zurek contends that summary judgment is not appropriate on this claim because 1) the non-competition agreement is unenforceable; 2) ERI committed a prior breach of the agreement; 3) he did not breach the agreement; and 4) ERI cannot show damages stemming from the alleged breach.  Zurek also argues that ERI is not entitled to summary judgment on his counterclaim for unpaid commissions.

### A.  Enforceability

ERI must demonstrate that the non-competition clause in the Agreement is enforceable. Kansas courts have routinely recognized the validity of covenants not to compete ancillary to an

---

[18]Doc. 18, Ex. 7.

[19]*Id.* Ex. 6.

[20]*Id.*

[21]Doc. 23, Ex. CC.

[22]*Id.*

employment contract if the covenant is reasonable and not adverse to the public interest.[23]

"Freedom of contract is the driving force behind finding such covenants enforceable."[24]   In

*Weber v. Tillman*, the Kansas Supreme Court set out the following four factors to guide a court's

decision on whether a non-competition covenant is enforceable:  "(1) Does the covenant protect

a legitimate business interest? (2) Does the covenant create an undue burden on the employee?

(3) Is the covenant injurious to the public welfare? (4) Are the time and territorial limitations

contained in the covenant reasonable?"[25]   Additionally, non-competition covenants are strictly

construed against the employer.[26] Zurek contends that the non-competition covenant is not

enforceable under the first and fourth factors.

### 1.  Legitimate Business Interest

"[T]he mere desire to prevent ordinary competition does not qualify as a legitimate

interest of an employer and a restrictive covenant is unreasonable if the real object is merely to

avoid such ordinary competition."[27]   Kansas courts have recognized that employers have a

legitimate interest in preserving relationships with clients.[28]   In many circumstances, "customer

contacts" is a legitimate interest to be protected by a covenant not to compete.[29]   This is

especially true where "the business is one in which the employee is the sole or primary contact

with the customers and in which a close personal relationship with them is fostered."[30]   ERI

---

[23]*Idbeis v. Wichita Surgical Specialists, P.A.*, 112 P.3d 81, 86–87 (Kan. 2005); *Varney Bus. Servs., Inc. v. Pottroff*, 59 P.3d 1003, 1014–15 (Kan. 2002).

[24]*Pottroff*, 59 P.3d at 1015.

[25]913 P.2d 84, 90 (Kan. 1996).

[26]*Id.* at 89.

[27]*Id.*

[28]*Id.*

[29]*See Am. Fid. Assurance Co. v. Leonard*, 81 F. Supp. 2d 1115, 1120 (D. Kan. 2000).

[30]*Id.* (citation omitted).

argues that the covenant serves to protect a legitimate interest beyond general competition.  ERI contends that Zurek admits that the principals were principals of ERI, not Zurek.  Zurek was the only ERI representative in the northern Illinois and southern Wisconsin territory.  Moreover, ERI contends, Zurek's relationship with any principal had not existed for more than seven years prior to his employment with ERI.

Zurek counters that he had relationships with Parmi, Universal, Speedline and others that pre-dated his employment with ERI, and that clients followed him to ERI.  Zurek cites *Oldham Graphic Supply, Inc. v. Cornwell*, where the court declined to enforce a restrictive covenant not to compete, taking into consideration whether the employee had pre-existing client relationships, the employee's experience in the field, whether the employee used any confidential information of the employer, and whether the employee received any additional consideration for his clients other than his regular wages and commissions.[31]  Here, Zurek contends that ERI did not have any competitive product lines in northern Illinois and southern Wisconsin before it hired him, it did not expend any sums on developing clients in those territories assigned to Zurek, he was not provided any extra compensation for bringing clients to ERI other than his regular wages, ERI did not train him, and he did not possess any proprietary or confidential information.

The record before the Court is less than clear on the nature and degree of the relationships Zurek had with the principals at issue and whether they followed him to ERI.   Accordingly, the Court finds that genuine issues of material fact exist that preclude summary judgment on the issue of whether the noncompetition covenant served a legitimate business interest.

---

[31]No. 09-1250-WEB-KMH, 2009 WL 3003850, at *7–10 (D. Kan. Sept. 17, 2009) (interpreting Illinois law).

### 2.  Geographic and Temporal Restrictions

Reasonableness is determined based on the facts and circumstances of each case.[32]  To be reasonable, the geographic and temporal restrictions of a covenant not to compete "must be no greater than necessary to protect the employer's interest."[33]  The Court finds the three-year time limitation is reasonable, as such restrictions have been upheld in the Kansas courts.[34]  Although Zurek argues that three years is unreasonable given he worked at ERI for less than two years, he voluntarily left his employment without notice.  "The employer should be given a reasonable period of time to overcome the employee's personal hold over the customers."[35]

The covenant also precludes Zurek from competing in the territory he worked for ERI in sales involving the same principals and customers, including northern Illinois and southern Wisconsin.  Zurek argues this restriction is overly broad because it prohibits him from working in a territory where he has worked for years.  The Court disagrees.  Under the circumstances, the geographic restriction is appropriate, as Zurek was the exclusive sales representative for ERI in that exclusive territory, providing him an advantage in securing that business from ERI if he were to leave its employment.  The Court further finds the agreement does not impose an undue burden, as it does not prohibit Zurek from forming a new company or representing clients in Illinois or Wisconsin, only that he must refrain from contacting or dealing with ERI principals that he worked with during his term of employment.  The Court thus finds the geographic and temporal restrictions are reasonable.

---

[32]*Leonard*, 81 F. Supp. 2d at 1120.

[33]*Id.* at 91.

[34]*Uarco, Inc. v. Eastland*, 584 F. Supp. 1259, 1263 (D. Kan. 1984) (upholding a two-year restriction); *Weber v. Tillman*, 913 P.2d 84, 90 (Kan. 1996) (same); *Wichita Clinic, P.A. v. Louis*, 185 P.3d 946, 958–59 (Kan. Ct. App. 2008) (upholding three-year restriction); *Caring Hearts Personal Home Servs. v. Hobley*, 130 P.3d 1215, 1222–23 (Kan. Ct. App. 2006) (two-year restriction).

[35]*Leonard*, 81 F. Supp. 2d at 1121.

**B. ERI and Zurek's Respective Performance under the Agreement**

ERI contends that in the month after leaving ERI, Zurek signed a representative agreement for the same territory and products he sold for ERI with Parmi and Universal, in clear breach of his noncompete agreement.  Zurek argues that ERI cannot enforce the noncompete agreement due to its prior breach, and counters that ERI has offered no evidence that sales he made on behalf of Parmi and Universal were in ERI's territory.

Zurek counters that ERI was the first to breach the Agreement by failing to pay Zurek his salary and commissions as required by the Agreement.  Due to this breach, Zurek argues that ERI may not obtain the benefit of the covenant not to compete in his employment agreement.  A party may not enforce the provisions of a contract if it first breached the agreement.[36]  In reliance on this argument, Zurek cites *Alexander & Alexander, Inc. v. Feldman*,[37] a case that construes Missouri law.  In that case, the court found that the employer had breached the employment contract at issue by unilaterally modifying the employee's compensation package, despite a provision in the contract that expressly prohibited unilateral modification of its terms.[38]  In this case, Zurek argues that ERI breached the Agreement by failing to pay his first salary payment, advancing his salary as an undocumented loan, not paying his commissions as due, and by underreporting commission amounts received.  ERI disputes Zurek's version of the facts, and contends that he has been paid all salary and commissions owed under the Agreement.

As to whether ERI or Zurek breached the noncompetition Agreement, the Court finds that, when viewing the evidence in the light most favorable to the nonmoving

---

[36]*Youell v. Grimes*, 217 F. Supp. 2d 1167, 1175 (D. Kan. 2002) (recognizing under Kansas law that an insurer who wrongfully breaches an insurance contract may not defend by asserting the insured also later breached the contract).

[37]913 F. Supp. 1495 (D. Kan. 1996).

[38]*Id.* at 1501.

party, genuine issues of material fact exist that preclude summary judgment.  Both sides proffer

conflicting accountings of Zurek's compensation as well as affidavits and characterization of

contradictory deposition testimony in support of their respective positions.  The Court may not

make credibility determinations or weigh the evidence at the summary judgment stage.[39]

Likewise, it necessarily follows that summary judgment on Zurek's counterclaim for unpaid

salary and commissions is also precluded.

## IV.     CONCLUSION

As in most contract cases involving a noncompetition agreement, this case is heavily fact-

driven; unlike most cases, however, ERI did not seek nor did the Court conduct a preliminary

injunction hearing and instead moves for summary judgment on its breach of contract claim and

request for a permanent injunction enforcing the three-year restrictive covenant.  As the party

with the burden of proof at trial, ERI must prove every element of its breach of contract claim.

Because material issues of fact remain on whether the noncompete agreement is enforceable

because it protects a legitimate business interest as well as whether the parties breached their

respective obligations under the Sales Representative Agreement, summary judgment is not

appropriate on ERI's breach of contract claim or Zurek's counterclaim.  The Court does not

reach the issue of damages or whether ERI is entitled to a permanent injunction through

September 2017.  The breach of contract claim and counterclaim will proceed to trial along with

the remaining tortious interference with contract claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff ERI's Motion

for Partial Summary Judgment (Doc. 17) is DENIED.

---

[39]*Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1022 (10th Cir. 2007) (noting that credibility determinations, the weighing of evidence, and the drawing of legitimate inferences must be done by the factfinder).

**IT IS SO ORDERED.**

Dated: October 7, 2016

S/ Julie A. Robinson
JULIE A. ROBINSON

UNITED STATES DISTRICT JUDGE